UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

EDELINE LYLA,

     Plaintiff,

v.

THE STATE OF FLORIDA; ADMINISTRATIVE
OFFICE OF THE COURTS, ELEVENTH
JUDICIAL CIRCUIT OF FLORIDA, a Florida Agency;
COURT ADMINISTRATOR SANDRA M.
LONERGAN, Individually;
CHIEF DEPUTY COURT ADMINISTRATOR
SANDRIA GARCIA, Individually,

     Defendants,

_____/

## **COMPLAINT**

Plaintiff EDELINE LYLA ("Plaintiff" or "Lyla") sues defendants THE STATE OF FLORIDA; ADMINISTRATIVE OFFICE OF THE COURTS, ELEVENTH JUDICIAL CIRCUIT OF FLORIDA; COURT ADMINISTRATOR SANDRA M. LONERGAN, Individually; and CHIEF DEPUTY COURT ADMINISTRATOR SANDRIA GARCIA, Individually (collectively, "Defendants"), and alleges:

## **NATURE OF THE ACTION**

1.    This is an action by Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), 42 U.S.C. § 1983 ("§ 1983"), and the Florida

Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA") to redress injuries resulting from Defendants' unlawful discriminatory treatment on the basis of race and retaliation.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action under 42 U.S.C. § 2000e *et seq*., and 28 U.S.C. §§ 1331, 1343(3) and (4) and 1367(a).

2.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391, because Defendants reside in this district, having their principal place of business within this district; also, because Defendants are subject to the Court's personal jurisdiction with respect to the civil action at bar and because all or a substantial part of the events or omissions giving rise to this cause of action took place in this judicial district.

3.     Plaintiff also invokes the supplemental jurisdiction of this Court to hear and decide claims arising under the laws of the State of Florida that are so related to claims in the action within the original jurisdiction of this district Court that they form part of the same case or controversy under Article III of the United States Constitution. Specifically, Plaintiff is bringing claims under the FCRA.

## PARTIES

4.     Plaintiff is a resident of Miami-Dade County, Florida, and, as a black woman of Haitian descent, she is a member of certain protected classes of persons.

5.     Defendant THE STATE OF FLORIDA (the "STATE") employs over 501 individuals and is an employer within the meaning of Title VII and the FCRA.

6.     Defendant ADMINISTRATIVE OFFICE OF THE COURTS, ELEVENTH JUDCIAL DISTRICT OF FLORIDA (the "AOC") is an agency of the State of Florida that was

and is operating in Miami-Dade County, Florida, and has continuously had at least fifteen (15) employees.

7.    Defendant COURT ADMINISTRATOR SANDRA M. LONERGAN ("LONERGAN"), upon information and belief, resides in Miami-Dade County, Florida. LONERGAN is being sued in her individual capacity under § 1983 for violating 42 U.S.C. § 1981, as amended ("§ 1981").

8.    Defendant CHIEF DEPUTY COURT ADMINISTRATOR SANDRIA GARCIA ("GARCIA"), upon information and belief, resides in Miami-Dade County, Florida. GARCIA is being sued in her individual capacity under § 1983 for violating § 1981.

## PROCEDURAL REQUIREMENTS

9.    All conditions precedent to bringing this action have been fulfilled. Plaintiff dual-filed three Charges of Discrimination with the EEOC, and also with the Florida Commission on Human Relations within 300 days of the alleged violation. To date, over six (6) months have passed since the filing of the complaints. On or about June 18, 2019, the U.S. Equal Employment Opportunity Commission issued to Plaintiff a Dismissal and Notice of Rights with respect to such charge of discrimination.

## STATEMENT OF FACTS

10.    Plaintiff was employed by the STATE and the AOC as the Chief of Personnel Services from August 8, 2016, until her termination on February 22, 2018.

11.    During Plaintiff's employment, Defendants consistently engaged in a systematic pattern of favoring Hispanic employees and applicants over non-Hispanics and creating a hostile environment for those non-Hispanic employees.

12.     Plaintiff was treated as a valued member of the team and faced no discipline until she spoke up about the discriminatory treatment towards non-Hispanics, which led to unwarranted and unequal discipline, and ultimately termination.

13.     In her role with the STATE and the AOC, Plaintiff was responsible for directing and managing the operations of AOC's Human Resources Division.

14.     On or about November or December 2016, Plaintiff was involved in the hiring process for the position of an HR Generalist.

15.     Plaintiff suspected that the recruiter, Maria Mihaic, had provided an advantage to a Hispanic candidate over a non-Hispanic candidate by preparing her for a second interview, and expressed her concern to her immediate supervisor, Defendant GARCIA.

16.     GARCIA encouraged Plaintiff to hire the Hispanic candidate, even though she was not the top-rated candidate.

17.     An offer was extended to the Hispanic candidate, who resigned shortly after commencing employment with the AOC.

18.     Following the Hispanic candidate's resignation, Plaintiff asked the recruiter to make an offer to the top-rated candidate, who was non-Hispanic. Pursuant to the AOC's practice and procedure they did not need to re-advertise the position since it was still within six months from the interview, however, Plaintiff's supervisor directed her to re-advertise the position.

19.     Plaintiff reached out to the HR manager, Ileana Munoz ("Munoz"), to confirm the AOC's procedure and confirmed that the top candidate was still interested in the

position; nevertheless, Plaintiff's supervisor still directed Plaintiff to re-advertise the position.

20.     GARCIA became extremely upset with Plaintiff for inquiring whether they were being consistent in their recruitment practices, so the next morning GARCIA came directly to Plaintiff's office and asked why she did not follow her directives.

21.     GARCIA scolded Plaintiff and advised her not to instruct the recruiter to offer the position to the top-rated non-Hispanic candidate.

22.     In a separate conversation related to the hiring, Munoz indicated that "[she did] not want another Yolan," referring to another non-Hispanic employee.

23.     Shortly after Plaintiff voiced her concerns and disagreements, she noticed that her supervisor began to treat her differently.

24.     GARCIA no longer shared certain employee relations matters with Plaintiff, she bypassed Plaintiff and went directly to the recruiter for recruitment matters, Plaintiff was invited to fewer meetings, and GARCIA would attend certain meetings without Plaintiff and then later provide directives to Plaintiff.

25.     Additionally, GARCIA's best friend, the training manager, started spying on Plaintiff at work.

26.     In March 2017, the Assistant Director of Finance, who is not Hispanic, complained of retaliation and hostile work environment against her supervisor, the Director of Finance, who is Hispanic.

27.     Plaintiff shared her concerns with her supervisor, that because the Director of Finance is Hispanic the AOC did not act despite being put on notice.

28.     Sometime in July 2017, a non-Hispanic employee resigned and completed an exit interview alleging discrimination and hostile work environment. The allegation was not thoroughly investigated, and Plaintiff expressed her concerns to GARCIA and the former general counsel that non-Hispanic employees felt that they are being treated differently.

29.     In November or December 2017, Plaintiff participated in the hiring process for an HR assistant. During the interview, the HR Manager once again expressed her preference for a Hispanic candidate despite that candidate not being the top-rated candidate in the interview process.

30.     Once again Plaintiff expressed that the most qualified candidate should be selected; especially since the position does not require fluency in Spanish.

31.     However, GARCIA later asked Plaintiff whether the selected candidate spoke Spanish (in other words, was she Hispanic).

32.     GARCIA said that LONERGAN wanted to know why someone that speaks Spanish was not selected, even though there was no additional language preference advertised in the job posting, the person that was previously in the position did not speak Spanish, and the temp that was currently in the position assisting the division did not speak Spanish.

33.     Plaintiff was later asked to justify the hiring of the top-rated non-Hispanic candidate or to re-advertise in order to select a "Spanish speaker." There was considerable amount of pressure to hire a Hispanic individual even though there were no qualified Hispanic applicants.

34.     Plaintiff provided justification for the top-rated candidate and reminded GARCIA and the HR manager that the STATE and the AOC do not want to open themselves up to liabilities for making an arbitrary, let alone a biased decision.

35.     Shortly after the top-rated candidate started, Plaintiff noticed that again GARCIA's interactions toward her changed.

36.     Plaintiff's attendance at meetings became less and less frequent, there were times she was not invited to any meetings; questions arose regarding Plaintiff's work product and the way she managed the HR team members that reported to her.

37.     On or about February 7, 2018, Plaintiff was presented with a final determination memo and Performance Improvement Plan ("PIP") following a complaint of hostile environment and retaliation filed by one of her direct reports for not promoting her to the position of recruiter.

38.     Prior to the investigation, LONERGAN came to Plaintiff's office the week of December 25, 2017, and/or week of January 1, 2018, and shared that she had received a complaint and upon reviewing saw no grounds for retaliation or hostile environment but stated: "we want to look into other things."

39.     Despite the fact that the investigation of the allegations found that both the retaliation and hostile work environment allegations were unsupported, the PIP memo contradicted the findings and stated that violation of the workplace violence policy was supported by the investigation.

40.     Plaintiff expressed her disagreement and pointed out the contradiction and also the preferential treatment given to Hispanic division directors.

41.     The issuance of the PIP was different than the treatment faced by similarly situated Hispanic directors that received complaints from subordinates and went through "coaching and development" meetings or were provided guidance by LONERGAN and GARCIA.

42.     After a follow-up meeting on, or about, February 12, 2018, Plaintiff related that she had consulted with an attorney and would not be signing the PIP because she was being punished and discriminated against when compared to the Hispanic directors, and as punishment for raising concerns and not agreeing with their practices.

43.     Following a meeting with Plaintiff's attorney, Defendants agreed that the verbiage of the PIP was inappropriate and would revise the Final Determination Memo and PIP.

44.     Defendants revised the PIP and provided a February 20, 2018, deadline to reply, which Plaintiff complied with.

45.     On February 22, 2018, Plaintiff received a termination letter indicating that "[a]fter reviewing the positions taken in [Plaintiff's attorney's] letter dated February 20th, it is evident that your interests are substantially misaligned with those of the AOC and Eleventh Judicial Circuit. As a result, this letter serves to confirm that your employment with the Administrative Offices of the Court is terminated effective Thursday, February 22, 2018."

### COUNT I:
### <u>VIOLATION OF TITLE VII: DISCRIMINATION BASED ON RACE</u>
### <u>(against the STATE and the AOC)</u>

46.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 above as if set out in full herein.

47.     Plaintiff is a member of a protected class of black citizens.

48.     At all times material hereto, the STATE and the AOC failed to comply with Title VII [42 U.S.C. 2000 e-2 (a)], which states, "It shall be an unlawful employment practice for an employer to: (1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

49.     During the course of Plaintiff's employment with the STATE and the AOC, Plaintiff was subjected to a discriminatory, hostile and offensive work environment, which was substantially motivated by her race, as more fully described in paragraphs 10-45 of this Complaint.

50.     The offensive and discriminatory conduct referred to in paragraphs 10-45 of this Complaint was offensive to Plaintiff and would be offensive to a reasonable person.

51.     Plaintiff was terminated on or about February 22, 2018.

52.     The STATE's and the AOC's decision to discriminate against, and ultimately terminate Plaintiff was because of Plaintiff's race. Alternatively, Plaintiff's race was a motivating factor in the STATE's and the AOC's decision to discriminate against Plaintiff.

53.     Plaintiff was qualified for the position she held at the STATE and the AOC.

54.     The STATE and the AOC are sophisticated employers that have actual knowledge of the requirements of Title VII.

55.     The failure of the STATE and the AOC to adhere to the mandates of Title VII was willful and its violations of the provisions of Title VII were willful.

56.     The STATE and the AOC, through their employment practices, willfully, and with malicious or reckless disregard of Plaintiff's federally protected rights, discriminated against Plaintiff on account of her race in violation of Title VII with respect to their decision to treat Plaintiff differently from other employees.

57.     Plaintiff's treatment by the STATE and the AOC and Plaintiff's termination from her employment was directly and proximately caused by the STATE's and the AOC's unjustified discrimination against Plaintiff because of her race. Alternatively, Plaintiff's race was a motivating factor that made the STATE and the AOC harass and terminate Plaintiff.

58.     At the time of the unlawful discrimination, Plaintiff satisfactorily performed the essential job functions assigned to her by the STATE and the AOC.

59.     Any alleged nondiscriminatory reason for the termination of Plaintiff's employment asserted by the STATE and the AOC is a mere pretext for the actual reason for the termination from employment – Plaintiff's race.

60.     Discrimination on the basis of race constitutes unlawful discrimination.

61.     As a direct and proximate result of the STATE's and the AOC's intentional conduct, Plaintiff suffered serious economic losses as well as mental pain and suffering.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a) Enter judgment in Plaintiff's favor and against the STATE and the AOC for their violations of Title VII;

b) Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c) Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d) Award Plaintiff prejudgment interest on her damages award;

e) Award Plaintiff reasonable costs and attorney's fees; and

f) Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT II:**
**VIOLATION OF TITLE VII: RETALIATION**
**(against the STATE and the AOC)**

62.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 above as if set out in full herein.

63.     At all times material hereto, the STATE and the AOC failed to comply with Title VII [42 U.S.C. 2000 e-2 (a)], Section 704(a), which makes it unlawful for an employer to retaliate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added).

64.     The STATE and the AOC are sophisticated employers that have actual knowledge of the requirements of Title VII and specifically of Section 704(a) of Title VII, which specifically

makes it unlawful to retaliate against employees who oppose or participate in statutorily protected activity.

65.    The failure of the STATE and the AOC to adhere to the mandates of Title VII was willful and their violations of the provisions of Title VII were willful.

66.    The STATE and the AOC, through their employment practices, willfully, and with malicious or reckless disregard of Plaintiff's federally protected rights, retaliated against Plaintiff because of Plaintiff's complaints of discrimination.

67.    While employed by the STATE and the AOC, Plaintiff received disparate treatment because of her race and observed others treated poorly because of their race, specifically, those who were non-Hispanic.

68.    Plaintiff complained to her supervisors about the poor treatment, and discriminatory practices against non-Hispanic employees.

69.    In February 2018, the STATE and the AOC fired Plaintiff, and Plaintiff's firing was directly and proximately caused by the STATE's and the AOC's unjustified discrimination and retaliation against Plaintiff because of her complaints of unlawful discrimination and harassment in violation of both Federal and state laws.

70.    Moreover, Plaintiff's termination came in temporal proximity after Plaintiff's participation in protected activity.

71.    The STATE and the AOC fired Plaintiff and the termination was directly and proximately caused by Plaintiff's complaints about disparate treatment.

72.     As a direct and proximate result of the STATE's and the AOC's intentional conduct, Plaintiff suffered serious economic losses as well as mental pain and suffering.

73.     Any alleged nondiscriminatory reason for terminating Plaintiff asserted by the STATE and the AOC is a mere pretext for the actual reasons for termination – Plaintiff's complaints of discrimination and harassment on basis of her race.

74.     Retaliation on the basis of having engaged in protected activity constitutes unlawful retaliation.

75.     The STATE's and the AOC's acts were done with malice and reckless disregard for Plaintiff's federally protected civil rights.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a)  Enter judgment in Plaintiff's favor and against the STATE and the AOC for their violations of Title VII;

b)  Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c)  Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d)  Award Plaintiff prejudgment interest on her damages award;

e)  Award Plaintiff reasonable costs and attorney's fees; and

f)  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT III:**
**VIOLATION OF THE FCRA: DISCRIMINATION BASED ON RACE**
**(against the STATE and the AOC)**

76.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 and above as if set out in full herein.

77.     At all times material hereto, the STATE and the AOC failed to comply with the FCRA [Florida Statutes Section 760.10] which states,

> "*It is an unlawful employment practice for an employer: To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race*, color, *religion, sex, national origin, age, handicap, or marital status.*"

78.     Plaintiff is a member of a protected class of black citizens

79.     The STATE's and the AOC's decision to discriminate against Plaintiff was because of her race. Alternatively, Plaintiff's race was a motivating factor that caused the STATE and the AOC to discriminate against Plaintiff.

80.     At all relevant times aforementioned, including the time of discrimination, the STATE and the AOC were aware that Plaintiff was black.

81.     At the time of the unlawful discrimination, Plaintiff satisfactorily performed the essential job functions assigned to her by the STATE and the AOC.

82.     Plaintiff was qualified for the position that she held at the STATE and the AOC.

83.     Plaintiff was discriminated against by her supervisor, GARCIA, and other employees within the STATE and the AOC's management because she was black.

84.     The STATE and the AOC are sophisticated employers who have actual knowledge of the requirements of the FCRA.

85.     The failure of the STATE and the AOC to adhere to the mandates of the FCRA was willful and their violations of the provisions of the FCRA were willful.

86.    The STATE and the AOC, through their employment practices, willfully, and with malicious or reckless disregard of Plaintiff's State protected rights, discriminated against Plaintiff because of her race in violation of the FCRA with respect to their decision to treat Plaintiff differently from other employees.

87.    The STATE and the AOC wrongfully terminated Plaintiff and Plaintiff's termination from employment was directly and proximately caused by the STATE's and the AOC's unjustified discrimination against Plaintiff because of Plaintiff's race.

88.    As a direct and proximate result of the STATET's and the AOC's intentional conduct, Plaintiff suffered serious economic losses as well as mental anguish, humiliation, and pain and suffering.

89.    Any alleged nondiscriminatory reason for the termination of Plaintiff's employment asserted by the STATE and the AOC is a mere pretext for the actual reasons for the termination from employment – Plaintiff's race.

90.    Discrimination on the basis of race constitutes unlawful discrimination in violation of the FCRA.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a)  Enter judgment in Plaintiff's favor and against the STATE and the AOC for their violations of the FCRA;

b)  Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c)  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d)  Award Plaintiff prejudgment interest on her damages award;

e)  Award Plaintiff reasonable costs and attorney's fees; and

f) Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT IV:**
**VIOLATION OF THE FCRA:  RETALIATION BASED ON RACE DISCRIMINATION**
**(against the STATE and the AOC)**

91.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 of this Complaint as if set out in full herein.

92.     This is an action against the STATE and the AOC for unlawful retaliation under the FCRA.

93.     The FCRA contains an anti-retaliation provision, forbidding employers from retaliating, or from taking adverse personnel action against, those employees who exercise their lawful and protected rights under the FCRA.

94.     The FCRA, *Fla. Stat. Section 760.10,* (7) reads in applicable part, as follows:

*"It is an unlawful employment practice for an employer, an employment agency, a joint labor management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section".*

95.     Plaintiff is a member of a protected class under the FCRA because of her race and participation in protected activities within the meaning of the FCRA.

96.     While employed by the STATE and the AOC, Plaintiff received disparate treatment because of her race and observed others treated poorly because of their race.

97.     Plaintiff complained to her supervisors about the poor treatment and discriminatory practices against non-Hispanic employees.

98.     In February 2018, the STATE and the AOC fired Plaintiff, and Plaintiff's firing was directly and proximately caused by the STATE's and the AOC's unjustified discrimination and retaliation against Plaintiff because of her complaints of unlawful discrimination and disparate treatment in violation of both Federal and State laws.

99.     Moreover, Plaintiff's termination came in temporal proximity after Plaintiff's participation in protected activity.

100.    As a direct and proximate result of the STATE's and the AOC's intentional conduct, Plaintiff suffered serious economic losses as well as mental pain and suffering.

101.    Any alleged nondiscriminatory reason for terminating Plaintiff asserted by the STATE and the AOC is a mere pretext for the actual reasons for termination – Plaintiff's complaints of discrimination and harassment on basis of her race.

102.    Retaliation on the basis of having engaged in protected activity constitutes unlawful retaliation.

103.    The STATE's and the AOC's actions were done with malice and reckless disregard for Plaintiff's State protected civil rights.

104.    As a direct and proximate result of the STATE's and the AOC's actions and omissions Plaintiff has suffered injury and losses including a violation of her statutory rights.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a)  Enter judgment in Plaintiff's favor and against the STATE and the AOC for their violations of the FCRA;

b)  Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c)  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d)  Award Plaintiff prejudgment interest on her damages award;

e)  Award Plaintiff reasonable costs and attorney's fees; and

f)  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT V:**
**VIOLATION OF § 1983: DISCRIMINATION IN VIOLATION OF § 1981**
**(against LONERGAN and GARCIA)**

105.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 of this Complaint as if set out in full herein.

106.   Plaintiff is a member of a protected class of black citizens.

107.   Plaintiff was discriminated against, harassed and ultimately terminated because of her race; she is not Hispanic.

108.   At all times relevant, Plaintiff was in a contractual relationship with LONERGAN and GARCIA within the meaning of § 1981.

109.   During the course of Plaintiff's employment with LONERGAN and GARCIA, Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Hispanic employees who worked for LONERGAN and GARCIA.

110.   LONERGAN's and GARCIA's treatment, practices and policies directed toward Plaintiff as more fully described in paragraphs 10-45 of this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by citizens that are not of Hispanic descent, in violation § 1981.

111.    LONERGAN's and GARCIA's treatment, practices and policies directed toward Plaintiff as complained of in paragraphs 10-45, denied Plaintiff the right to make and enforce contracts as enjoyed by citizens of Hispanic descent, in violation of § 1981.

112.    By mistreating Plaintiff and terminating her employment, LONERGAN and GARCIA intended to discriminate against Plaintiff on the basis of her race.

113.    During the course of Plaintiff's employment with LONERGAN and GARCIA, Plaintiff had been subjected to a discriminatory, hostile and offensive work environment because of her race.

114.    As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

115.    So that Plaintiff's rights may be protected, Plaintiff has retained the undersigned counsel who is entitled to attorney's fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys Fee Award Act.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a) Enter judgment in Plaintiff's favor and against LONERGAN and GARCIA for their violations of 42 U.S.C. § 1983, as amended;

b) Award Plaintiff actual damages suffered;

c) Award Plaintiff compensatory damages under 42 U.S.C. § 1983 for the embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered;

d) Award Plaintiff prejudgment interest on her damages award;

e) Award Plaintiff reasonable costs and attorney's fees; and

f) Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT VI:**
**VIOLATION OF § 1983: RETALIATION IN VIOLATION OF § 1981**
**(against LONERGAN and GARCIA)**

116.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 of this Complaint as if set out in full herein.

117.    Plaintiff is a member of a protected class of black citizens.

118.    Plaintiff was discriminated against, harassed and ultimately terminated because of her race; she is not Hispanic.

119.    At all times relevant, Plaintiff was in a contractual relationship with LONERGAN and GARCIA within the meaning of § 1981.

120.    During the course of Plaintiff's employment with LONERGAN and GARCIA, Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Hispanic employees that worked for LONERGAN and GARCIA.

121.    LONERGAN's and GARCIA's treatment, practices and policies directed toward Plaintiff as more fully described in paragraphs 10-45 of this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by citizens that are not of Hispanic descent, in violation of § 1981.

122.    While employed by the STATE and the AOC, Plaintiff complained to her supervisors about the poor treatment and discriminatory practices against non-Hispanic employees or job candidates. In retaliation, LONERGAN and GARCIA fired Plaintiff.

123.   LONERGAN's and GARCIA's termination of Plaintiff denied Plaintiff the right to make and enforce contracts as enjoyed by citizens of Hispanic descent, in violation of § 1981..

124.   LONERGAN's and GARCIA's termination of Plaintiff after Plaintiff complained about discrimination by LONERGAN and GARCIA denied Plaintiff the right to make and enforce contracts as enjoyed by citizens of Hispanic in violation of § 1981.

125.   As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

126.   So that Plaintiff's rights may be protected, Plaintiff has retained the undersigned counsel who is entitled to attorney's fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys Fee Award Act.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a)   Enter judgment in Plaintiff's favor and against LONERGAN and GARCIA for their violations of 42 U.S.C. § 1983, as amended;

b)   Award Plaintiff actual damages suffered;

c)   Award Plaintiff compensatory damages under 42 U.S.C. § 1983 for the embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered;

d)   Award Plaintiff prejudgment interest on her damages award;

e)   Award Plaintiff reasonable costs and attorney's fees; and

f)   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### COUNT VII:
### VIOLATION OF § 1983: DISCRIMINATION IN VIOLATION OF THE CONSTITUION
### (against LONERGAN and GARCIA)

127.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 of this Complaint as if set out in full herein

128.    Plaintiff is a member of a protected class of Black, non-Hispanic citizens.

129.    At all times necessary, Plaintiff was qualified to perform her job duties.

130.    During the course of Plaintiff' employment with the STATE and the AOC, LONERGAN and GARCIA subjected Plaintiff to a discriminatory, hostile and offensive work environment because of her race, as more fully described in paragraphs 10 to 45 of this Complaint.

131.    LONERGAN and GARCIA each maintained a policy or custom of racial discrimination in employment decisions and each have engaged in a pattern or practice of employment discrimination, specifically intentionally discriminating against Plaintiff on the basis of her race.

132.    LONERGAN and GARCIA, as more fully described in paragraphs 10 to 45 of this Complaint, deprived Plaintiff of her rights to the enjoyment of all benefits, privileges, terms and conditions of her employment contract and to be free of discrimination in public employment and as is enjoyed by Hispanic citizens.

133.    LONERGAN and GARCIA, in their individual capacity, violated the clearly established rights of Plaintiff guaranteed statute and the Fourteenth Amendment to the United States Constitution, of which a reasonable person would have known.

134.    At the time LONERGAN and GARCIA engaged in racial discrimination against Plaintiff, the law had been developed in such a concrete and factually defined context to make it obvious to all reasonable governmental actors in LONERGAN's and GARCIA's place that what they were doing violated the law.

22

135.    LONERGAN's and GARCIA's discrimination was in reckless disregard for the civil rights of the Plaintiff, so as to justify an award of punitive damages against them, in their individual capacities, in favor of Plaintiff pursuant to § 1983.

136.    As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

137.    So that Plaintiff's rights may be protected, Plaintiff has retained the undersigned counsel who is entitled to attorney's fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys Fee Award Act.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a)  Enter judgment in Plaintiff's favor and against LONERGAN and GARCIA;

b)  Award Plaintiff actual damages suffered;

c)  Award Plaintiff compensatory damages under for the embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered;

d)  Award Plaintiff prejudgment interest on her damages award;

e)  Award Plaintiff punitive damages against LONERGAN and GARCIA in their individual capacities;

f)  Award Plaintiff reasonable costs and attorney's fees; and

g)  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT VIII:**
**VIOLATION OF § 1983: RETALIATION IN VIOLATION OF CONSTITUTION**
**(against LONERGAN and GARCIA)**

138.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-45 of this Complaint as if set out in full herein.

139.   While employed by the STATE and the AOC, Plaintiff complained to her supervisors about the poor treatment and discriminatory practices against non-Hispanic employees or job candidates. In retaliation, LONERGAN and GARCIA fired Plaintiff.

140.   LONERGAN and GARCIA deprived Plaintiff of her federally protected rights guaranteed by the Fourteenth Amendment to the United States Constitution, specifically her right to be free of retaliation for complaining about disparate and unequal treatment in the workplace.

141.   LONERGAN and GARCIA acted knowingly, intentionally and in reckless disregard of Plaintiff's federally protected rights to equal protection of the laws.

142.   As a direct and proximate result of the LONERGAN's and GARCIA's disparate and unequal treatment of Plaintiff, she has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

143.   LONERGAN's and GARCIA's retaliation was in reckless disregard for the civil rights of the Plaintiff, so as to justify an award of punitive damages against them, in their individual capacities, in favor of Plaintiff pursuant to § 1983.

144.   As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

145.    So that Plaintiff's rights may be protected, Plaintiff has retained the undersigned counsel who is entitled to attorney's fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys Fee Award Act.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a) Enter judgment in Plaintiff favor and against LONERGAN and GARCIA;

b) Award Plaintiff actual damages suffered;

c) Award Plaintiff compensatory damages under for the embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered;

d) Award Plaintiff prejudgment interest on her damages award;

e) Award Plaintiff punitive damages against LONERGAN and GARCIA in their individual capacities;

f) Award Plaintiff reasonable costs and attorney's fees; and

g) Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a trial by jury of all issues so triable.

Dated: September 16, 2019.

Respectfully submitted,

By:  _s/ R. Martin Saenz_____
R. Martin Saenz
Fla. Bar No.: 640166
msaenz@saenzanderson.com
Brandon J. Gibson, Esq.
Fla. Bar No.: 0099411
bgibson@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180

25

Telephone: (305) 503-5131
Facsimile: (888) 270-5549